THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:19-cr-00060-MR-WCM-1

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BOBBY ROGER BURCH, )<br>)<br>Defendant. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion for Compassionate Release [Doc. 229].

## I.  BACKGROUND

On June 5, 2019, the Defendant Bobby Roger Burch and five co-conspirators were charged in a 14-count Indictment with, among other things, a charge of conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine.  [Doc. 1].  On September 30, 2019, the Defendant pled guilty to this conspiracy count.  [Docs. 80, 92].  On March 24, 2020, this Court sentenced him to 262 months of imprisonment, to be followed by five years of supervised release.  [Doc. 187].  The Defendant is currently housed at United States Penitentiary

("USP") Yazoo City in Yazoo City, Mississippi, and his projected release date is November 2, 2037.[1]

The Defendant now moves for a reduction of sentence pursuant 18 U.S.C. § 3582(c)(1)(A). [Doc. 229]. For grounds, the Defendant argues that his parents' debilitating medical conditions make it difficult for them to care for themselves, and he asserts that he is "the only family member available to take care of them." [Doc. 229-3 at 7].

The Court ordered the Government to respond to the Defendant's motion. [Text-Only Order entered Jan. 12, 2022]. The Government filed its response on February 9, 2022. [Doc. 230]. After being given an extension of time to do so [see Doc. 233], the Defendant filed a reply [Doc. 234].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

---

[1] See https://www.bop.gov/inmateloc/ (last visited Apr. 26, 2022).

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has exhausted the necessary administrative remedies. [Doc. 230 at 2]. Accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the application notes to this policy statement set forth the various circumstances under which the Court can determine that "extraordinary and compelling reasons exist," including: the medical condition of the defendant, the age of the defendant, certain family circumstances, or other reasons. This policy

3

statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Here, the Defendant argues that extraordinary and compelling reasons exist because his parents have debilitating medical conditions that make it difficult for them to care for themselves. [Doc. 229-3 at 7]. Specifically, the Defendant alleges that his father suffers from "longstanding persistent atrial

4

fibrillation [irregular heart rhythm], cholecystitis [inflammation of the gall bladder], chronic obstructive pulmonary disease [COPD], essential hypertension [high blood pressure], coronary arteriosclerosis [coronary artery disease], degenerative disc disease, Type 2 diabetes mellitus, anxiety, [and] sleep disorder." [Id. at 11]. The medical records provided by the Defendant, however, indicate that the Defendant's father is receiving adequate medical care and is stable. [See Doc. 229-1 at 7-25]. Moreover, these records do not indicate that any of the conditions cited, when considered singly or in combination, are debilitating to such an extent that they interfere with his father's ability to care for himself. [Id.].

As for his mother, the Defendant alleges that she suffers from "Hyperkalemia [higher-than-normal potassium level], Depressive Disorder, Essential Hypertension [high blood pressure], Acute Phar[ ]yngitis [throat inflammation], Hip pain, Neck pain, Thoracic Back pain, Low back pain, Vomiting, [and] pain of right lower leg." [Doc. 229-3 at 22]. The only record submitted with respect to his mother's medical conditions is a half-page record which lists each condition and its respective date of onset. [Doc. 229-1 at 40]. There is no indication from this record if such conditions continue

to exist, how they are being treated, or whether such conditions in fact render his mother unable to care for herself or his father.

Significantly, there is nothing before the Court to indicate that the medical conditions of the Defendant's parents are anything new. In fact, the Court was made aware of the ailing health of the Defendant's parents in both the Presentence Report and the letters of support filed prior to the Defendant's sentencing. [See Doc. 153: PSR at ¶ 74 (noting that Defendant's father "has several physical health issues including COPD, degenerative disc disease and [diabetes]" and that Defendant's mother "is in remission from cancer"); see also Doc. 182: Letters of Support at 7 (letter from Defendant's sister stating "[o]ur parents depend on Bobby for the everyday chores of a homestead and are elderly and both ailing") and 17 (letter from Defendant's mother stating "[h]is dad and myself health is bad, so we really need our son home")]. Thus, the Court was already able to take into account the needs of the Defendant's elderly parents when fashioning the appropriate sentence. The Defendant does not point to any significant change in their circumstances that would warrant the extraordinary relief requested.

In addition to citing his parents' health conditions, the Defendant also appears to argue that his efforts at rehabilitation warrant a reduced sentence. Specifically, he cites the fact that he has obtained his GED, completed drug education classes, taken a walking and jogging class, and mentored young inmates while incarcerated. [Doc. 229 at 26; Doc. 234 at 3]. Rehabilitation alone, however, does not provide sufficient grounds for a sentence modification. See 28 U.S.C. § 994(t). Thus, while the Defendant's rehabilitative efforts during the relatively brief time he has been in prison are commendable, such efforts, without more, do not constitute extraordinary and compelling reasons justifying the Defendant's release.

The Defendant also appears to suggest in his reply that a reduction in his sentence is warranted because his sentence of 262 months was excessive and was not in keeping with the 10-year sentence that his counsel "implied" he would receive. [Doc. 234 at 9]. These contentions are without merit. First, with respect to the reasonableness of the sentence imposed, the Defendant agreed in his Plea Agreement that the amount of actual meth known to or reasonably foreseeable to him was 1,557.2 grams and that the amount of mixture or substance containing a detectable amount of meth known to or reasonably foreseeable him was 126.56 grams. [Doc. 80 at 2].

7

The Defendant also agreed in that Plea Agreement to the application of a two-level enhancement for possessing a dangerous weapon, a two-level enhancement for maintaining a premises for the purpose of distributing a controlled substance, and a two-level enhancement for obstructing or impeding the administration of justice. [Id.]. With these drug quantities and enhancements, the Defendant's total offense level was ultimately determined to be 39. [Doc. 153 at 15-16]. With a criminal history category of I [id. at 16], the Defendant's advisory Guidelines imprisonment range was 262 to 327 months [id. at 21]. The Court sentenced the Defendant at the low end of this Guidelines range. As such, the Defendant's sentence of 262 months was not excessive.

As for the Defendant's contention that a sentence of ten years was "implied" by defense counsel, this argument is belied by the Defendant's own sworn statements. In the Plea Agreement, the Defendant explicitly acknowledged that he was subject to a mandatory minimum sentence of ten years and a maximum term of life imprisonment; that the Court would consider the Sentencing Guidelines in determining his sentence; that the Court had not yet determined his sentence; that any estimate of his likely sentence was a prediction rather than a promise; and that the Court had the

8

ultimate discretion to impose any sentence up to the statutory maximum. [Doc. 80 at 2]. At the Rule 11 hearing, the Defendant confirmed his understanding of these matters under oath. [See Doc. 92]. He further confirmed under oath that no one had made any promises to him other than the promises contained in the written plea agreement. [Id. at 8]. In light of the Defendant's own sworn statements, any suggestion that there was some "implied" plea deal for a ten-year sentence is rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

In sum, the Court concludes that none of the circumstances cited, considered separately or in combination, constitute an extraordinary and compelling reason for a reduction in the Defendant's sentence.

Even if the Defendant could establish extraordinary and compelling reasons, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant was a member of a conspiracy responsible for distributing significant quantities of methamphetamine throughout Western North Carolina over the period of more than two years. The Defendant was a source of supply for multiple co-conspirators within the conspiracy, obtaining large quantities of methamphetamine in Georgia and transporting them back to North Carolina for sale to others. As such, he played a pivotal role in the conspiracy and a role that was larger and more important than some of his co-defendants. The sentence previously imposed by the Court appropriately reflects the seriousness of the Defendant's offense and his role in that offense.

The sentence previously imposed by the Court also accurately reflects the extent of the Defendant's offense in so far as it accounts for a number of aggravating factors that were present and that led to the application of several enhancements. The Defendant used his residence in furtherance of his drug trafficking activities, thereby placing his neighbors and his community at risk. The Defendant also possessed 39 firearms, including multiple loaded firearms, making his offense all the more dangerous than the average drug trafficking case in this District. Finally, unlike most drug trafficking cases in this District, the investigation revealed that the Georgia

10

based source of supply and the Defendant each attempted to obstruct or impede the administration of justice with respect to the investigation by threatening or intimidating co-conspirators who could be witnesses against them. In light of these factors, the Court finds that the 262-month sentence imposed adequately reflects the seriousness and extent of the Defendant's offense.

In sum, this Court imposed a sentence that was sufficient but not greater than necessary to accomplish the goals set forth in § 3553(a). The Court's sentence properly reflected the seriousness and extent of the offense, the need to deter criminality, and the need to protect the public from further crimes of the Defendant. Nothing put forth by the Defendant would justify reducing his 262-month sentence to a sentence of less than three years. The Defendant's motion for compassionate release is therefore denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Compassionate Release [Doc. 229] is **DENIED**.

**IT IS SO ORDERED.**

Signed: April 26, 2022

Martin Reidinger
Chief United States District Judge